DIVISION OF CHILD SUPPORT
ENFORCEMENT ex rel. Reba
REESE,[1] Petitioner,

v.

Carlos SHUBA, M.D., Respondent.

No. F–8497.

Family Court of Delaware,
New Castle County.

Submitted: Dec. 10, 1987.

Decided: March 10, 1988.*

Martha F. Sackovich, of Wilmington, for petitioner.

Jean A. Crompton, Wilmington, for respondent.

JAMES, Judge.

Present at a review de novo appeal hearing were petitioner, K.K., represented by

---

1. The names of the parties in the caption are pseudonyms selected by the Court.

* Selected for Publication Feb. 7, 1991.

Martha F. Sackovich, Esquire, D.A.G., for the Division of Child Support Enforcement, and the respondent, E.C., represented by Jean A. Crompton, Esquire.

Respondent has appealed that part of the Master's decision setting his child support obligation for M., born December 24, 1985, in the amount of $679.00 a month. The Court heard testimony from the parties on November 9, 1987 and, thereafter, received post-trial memoranda on December 10, 1987.

The central issue is whether the Delaware Child Support Formula is applicable under the factual circumstances of this case. Respondent asserts that the equitable presumption of the formula is rebutted in this case by two factors: First, the respondent's income exceeds $50,000.00 (i.e., $72,000.00) per year; and, second, since the child in question was born out-of-wedlock and the family lived together only briefly and in the mother's residence, the standard of living referred to in 13 *Del.C.* § 514(2) should be based predominantly on the custodial mother's income.

■ While the Court agrees that the Delaware Child Support Formula may not result in an equitable support order in all cases before the Court, the respondent's reliance on the $50,000.00 yearly income of one party as a disqualifying factor appears to be based upon dicta in *Boardley v. Jones,* Del.Fam., No. F–3846, Horgan, J. (November 14, 1985), where the Court noted that, "[a]s a general rule, the formula is not applied when one of the parties has an income in excess of $50,000.00 per year...." This identical figure was mentioned by the same Judge in a 1978 decision, *Morris v. Morris,* Del.Fam., No. 1397, Horgan, J. (October 18, 1978), where he defined an "ordinary case" to apply the Standard Of Living Adjustment aspect of the formula, "... as one where the amount of income involved is less than $50,000.00." No reason was articulated by the Court in the earlier decision for the selection of an income cap of $50,000.00; and, indeed, two factors mitigate against its broad acceptance as an arbitrary limitation upon the application of the Delaware Child Support Formula. Petitioner correctly notes that $82,580.65 would have been required in 1985 to equal the purchasing power of $50,000.00 in 1978. See, U.S. Bureau of Census, Statistical Abstract of the United States: 1987, table 763 (107th ed.1986). Thus, to be consistent, the income cap figure should have been increased to $82,000.00 by the Court in the 1985 decision. In addition, when this Court reviewed the Delaware Child Support Formula in 1984 and updated it to reflect changes in economic information and to incorporate broadly accepted implications developed by case law, no reference was made to a set figure at which the application of the formula would be unfair.

The other cases relied upon by petitioner are also inapplicable. In one case, the Court was concerned that the support paid for the children of the parties was being used to support other children in the custodial parent's household for whom the obligated parent had no financial responsibility. *McKenzie v. McKenzie,* Del.Fam., No. F–099, Gallagher, J. (January 9, 1985). In another, the Court dealt with the retroactive application of the formula to an unusual previous obligation whereby the non-custodial father was extensively involved in the lives of the minor children and, in fact, had provided significant and substantial direct payments by which their lifestyle was measured. These factors, coupled with the fact that the custodial mother appeared to be unemployed, indicated that a full application of the formula would prove inequitable. *Shupe v. Shupe,* Del.Fam., No. D–7201, Conner, J. (October 27, 1987).

■ Respondent's next claim that the Master's order resulted in a windfall to the custodial parent may have been influenced by the child's birth out-of-wedlock. Discrimination against a child based on illegitimacy is neither equitable nor constitutional and the fact that the family never established a living standard together does not preclude the Court from ordering a Standard Of Living Adjustment. As Judge Melson stated in the original opinion setting forth what is now known as the Delaware Child Support Formula:

"Children, in particular, are entitled to a standard of living which is, insofar as reasonably possible, commensurate with that of the more affluent parent. It may be that providing such a standard for the children will confer upon the custodial parent possibly undeserved benefits, but that is no reason for shortchanging the children." *I.B. v. R.S.W.B.*, Del.Fam., No. A–3000, Melson, J. (November 10, 1977).

This concept, focusing on the best interests of the child and not of the parent, was reconfirmed recently in *Linda J. Clanton v. Joseph F. Dalton, Sr.*, Del.Super., No. 86A–FE–3 and 86A–FE–16 (Consolidated), Bifferato, J., 1987 WL 8693 (February 5, 1987), where the Superior Court reversed and remanded a Family Court decision which failed to apply the Delaware Child Support Formula. The Superior Court specifically rejected the conclusion that the formula amount should be reduced because it provided an undue benefit to the custodial parent. This decision also confirmed that relatively high incomes of parents do not, without more, warrant modification of the formula. Moreover, the Court noted that the Family Court must explain its departure from the formula, citing *Roman, A. v. Aldona, R.A.*, Del.Super., No. 81A–NO–4, Balick, J. (March 29, 1983).

In determining whether the amount calculated under the Delaware Child Support Formula in this case is fair and equitable, the Court reviewed the standards adopted in other jurisdictions by applying five formulas set out in detail in Chapter 33, "Child Support", *Family Law and Practice* (Matthew Bender, released March 11, 1987). Under all but one of those formulas the amount set would be higher and, in some cases, significantly so, than the figure ordered by the Master under the Delaware Child Support Formula. For example, the Wisconsin Child Support Formula

would produce a monthly child support obligation of $1,058.07, Colorado $732.72, Massachusetts $1,996.13, and Texas between $691.79 to $837.43. Only Washington would order an amount less than that established in Delaware, $531.76.

Interestingly, to the extent that there are caps under these various state formulas, this case would be included in all of them except, possibly, in Massachusetts where the court rule suggests if there is a single income over $75,000.00, or a combined income in excess of $100,000.00, that some of the support payments should be transferred if other than cash. In contrast, the Colorado formula applies to combined gross annual incomes up to a $120,000.00 per year, Texas to combined monthly net incomes of $4,000.00 or less, and Washington to combined monthly net incomes of up to $6,000.00, while Wisconsin contains no stated limits.

The formulas in these other states are based on recent economic research on the cost of child rearing with significant reliance upon the development of these guidelines on the economic analysis done by Thomas Espenshade, *Investing in Children*, (Urban Institute Press: Washington, D.C., 1984), and the work done by Robert G. Williams, Ph.D., *Development of Guidelines for Child Support Orders*, Report to the U.S. Office of Child Support Enforcement, Institute for Court Management, Denver (March, 1987).[1] A number of professionals, including economists and law professors writing in the compilation of the proceedings of a national conference on the development of child support guidelines, commented on the need for more recent economic information on the cost of child rearing and single parent households. Since the Delaware Child Support Formula was last reviewed and updated in 1984, the amounts now obtained thereunder are no

---

**1.** The work of Mr. Williams was done pursuant to a grant from the Office of Child Support Enforcement, U.S. Department of Health and Human Services. Based on this analysis, Mr. Espenshade established the cost of raising a child in a high social economic environment at $701.00 per month in 1986 dollars. Other researchers, using more recent survey informa-

tion, established a monthly net expenditure on children at the level of the combined incomes of the parties in this case at $996.00 per month. C, Terrell, "Comments and Questions relating to the Colorado Child Support Guidelines," *Essentials of Child Support Guidelines Development: Economic Issues and Policy Considerations*, (Women's Legal Defense Fund, 1987).

doubt low and would be increased if the formula is again reviewed and updated.

The Court must now determine whether any other factors exist in this case which would rebut the applicability of the formula. No hardship argument has been raised as the parties were in agreement that, even after paying the child support ordered, the respondent would have $538.95 per month available above his expenses. The Court should not penalize petitioner because she has established a lifestyle based solely upon her income pending final adjudication of the child support issue.[2] Indeed, the equities of this case would favor the petitioner since the respondent has shown little interest in becoming involved with this child. Where, as here, the non-custodial parent fails to have regular visitation contact with the child, the expenses in child rearing increase for the custodial parent justifying an increase in child support.

Based on all of the foregoing, Court finds that the amount of support established by the Master is appropriate and that order is hereby affirmed; however, the Court shall grant a stay of the existing wage attachment conditioned upon respondent's full and timely compliance with the order as required by 13 *Del.C.* § 513. Since petitioner shall receive the support ordered as a fiduciary for the child, she must render an account to the respondent, upon application for good cause shown, setting forth in reasonable detail the expenditures made by her for or on behalf of the child from the funds received as child support.

IT IS SO ORDERED.

2. Since it is likely that this child will attend college, it may be appropriate for the custodial parent to reserve some of the child support received to help finance this higher education, in light of the following observation:

"In intact families where higher education is a family goal, planning for the cost of higher education often begins well before the child's graduation from high school. In cases of divorce or out-of-wedlock, however, such planning is often lacking even when the resources are available to the parents. The child is then forced to forego higher education altogether or to choose an institution on the basis of cost that is not otherwise commensurate with his or her ability or expectation had the family been intact, or the child and custodial parent assume a disproportionate share of these expenses. According to one study, over 50% of the college age children of divorced families in a wealthy suburban county in northern California (Morin County) did not receive financial support for higher education from their affluent parent, even where the income exceeded $100,-000.00 (Wallerstein, ABA Journal, September, 1985)." Report of the Guidelines Committee to the Governor's Commission on Child Support (Massachusetts, October, 1985).